JAMES K. FORD and Another, as Administrators, etc., of BENJAMIN PAGE, Deceased, Appellants, v. CHARLES O. LIVINGSTON and Others, Respondents.

*Money paid for easements in a lunatic's real estate passes to the lunatic's heirs.*

Money paid by an elevated railroad company to the committee of a lunatic, in pursuance of the judgment of a court, as "fee damages" and as the price of a conveyance of the easements appurtenant to the lunatic's real estate taken by the railroad, is to be deemed real estate as long as the owner's incompetency exists, and in case he continues a lunatic all his life, it passes, on his death, to his heirs and not to his personal representatives.

APPEAL by the plaintiffs, James K. Ford and another, as administrators of the estate of Benjamin Page, deceased, from a judgment of the Supreme Court rendered at the New York Special Term after a trial and decision by the court, and entered in the office of the clerk of the city and county of New York on the 17th day of February, 1893.

*H. A. Forster*, for the appellants.

*W. E. Wyatt*, for the respondents.

VAN BRUNT, P. J.:

In 1851, one Benjamin Page became seized in fee of the premises 38 and 40 West Broadway, by devise from his grandfather, John R. Livingston. In 1876, Page, still seized of these premises, was declared to be a lunatic, and Stephen H. Olin was duly appointed committee of his person and estate. Page continued a lunatic all his life, and said Olin was his committee at the time of his death.

In 1877 the Metropolitan Elevated Railway Company commenced the erection of the Sixth Avenue Elevated railroad in front of 38 and 40 West Broadway, and shortly after the railroad and its equipments were leased by the Manhattan Elevated Railway Company, which has operated it ever since, and thereby greatly impaired the value of said premises. In October, 1888, Olin, as such committee, began an action in the Superior Court to restrain the railroad company from operating its railroad in front of

said premises and for past rental damages. And on the 13th of December, 1890, a judgment was entered enjoining the maintenance and operation of said railroad unless the railroad company paid to said Olin, as committee, $4,000, with interest from the date of the judgment as fee damages, as they have been termed, and requiring him in that event to execute to the said companies conveyances or releases of the easements taken by them. In January, 1892, the elevated railroad companies proposed to compromise by paying $4,000, but without interest as the judgment required. And on the 25th of January, 1892, Olin presented a petition to the Court of Common Pleas, asking leave to execute releases and conveyances to the companies of the easements taken by them upon receiving the sum of $4,000, although the judgment of the Superior Court required the payment of $4,000 with interest. Upon the same day the court made an order granting leave to Olin, as committee, to execute such releases and conveyances upon receipt from the elevated companies of $4,000. Olin, as such committee, executed and delivered to the railroad companies a release of all claims and causes of action arising out of the operation and maintenance of the railroad, and a conveyance of all the interests and easements which he as committee had in and to West Broadway in front of the premises in question taken by the railroad, as then constructed and operated, and on the same day the companies paid to him as committee $4,000 for fee damages and $2,000 for rental damages and certain costs.

On the 20th of February, 1892, Page died intestate, and in April, 1892, the plaintiffs were appointed administrators. Olin, as committee, turned over to the plaintiffs the moneys in his hands belonging to Page at the time of his death, except the sum of $4,000 paid to him for fee damage and $1,000 rental damage. The plaintiff having brought an action against Olin to recover the $5,000 so retained by him, an order of interpleader was made which directed the present defendants, the heirs at law of Page, to be substituted as defendants in place of Olin. Upon the trial of the action of interpleader, these facts appearing, the court adjudged the $4,000 fee damage to be real estate, and it was awarded to the defendants after deducting a proportionate amount of the costs allowed to Olin upon the granting of the interpleader, and the

$1,000 rental damage, after similar deductions, was awarded to the plaintiffs as assets of the estate. From the judgment thereupon entered this appeal is taken.

The sole question presented is whether this $4,000, which was the price paid by the railroad company for the easements taken by them from the lunatic was real estate or assets of the deceased lunatic belonging to his administrators.

After a careful examination of the elaborate brief upon the part of the appellants, we do not see, in view of the practice of the courts under similar circumstances, and which had been long established prior to the time of the passage of any statute upon the subject, that there can be any doubt but that the proceeds of the real estate of a lunatic, disposed of no matter how (unless perhaps pursuant to some authority coupled with an interest given by the lunatic while sane), remain real estate so long as his incompetency exists.

It is not necessary to discuss the proposition that the right to bring actions for fee damage is vested in heirs and not in personal representatives, and, therefore, that which is taken by such an action is to be considered as real estate, and the amount paid therefor to be deemed as real estate.

It was well settled, long prior to any provisions of our statutes, that the proceeds of real estate sold by the court belonging to lunatics and infants, should be considered real estate so long as the incompetency continued. The theory upon which this rule is based is an eminently just one, viz., that the character of one's property should not be changed without his consent. And a lunatic in consequence of his mental condition, and an infant in consequence of his incapacity from want of age, not being able either to consent or object to a change, it was held that the proceeds of the sales of such estates should retain their character until the owner had become entitled to the absolute possession of the same.

This principle is recognized in the case of *Horton* v. *McCoy* (47 N. Y. 21), and has also become engrafted upon our statutes in almost all proceedings for the sale of real estate of incompetent persons. But this regulation of the statutes was not the adoption of a new policy in respect to these matters, but was simply placing upon the statute book a rule which the court long previous thereto had recognized.

The counsel for the appellants claims certain irregularities in the proceedings in pursuance of which the committee assumed to execute the conveyance to the elevated railroad company.

We do not see that that has anything to do with the question before us. If the railroad companies were content to take it, that was a question for them to decide, and the personal representatives of the lunatic have no interest therein. It is not at all necessary, therefore, to consider the points which have thus been raised. The money was paid for the easements; if they were not conveyed, the title still remains in the heirs of the lunatic. But we imagine that after they have received the proceeds of the sale such a claim would not avail them much even if it had any foundation.

The judgment should be affirmed, with costs.

FOLLETT, J., concurred.

Judgment affirmed, with costs.